UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WILBERT WILLIAMS, IV                     CIVIL ACTION NO. 12-cv-0584

VERSUS                                   JUDGE HICKS

JAMES M. LEBLANC, ET AL                  MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Wilbert Williams, IV ("Plaintiff") is a self-represented former inmate of the David Wade Correctional Center.  He filed this action to complain of limitations on the exercise of his Muslim faith while housed in maximum custody extended lockdown.  Before the court is a Motion to Dismiss or for Summary Judgment (Doc. 34) filed by Defendants.  Plaintiff, who has since been released from prison, did not file any timely opposition.  For the reasons that follow, it is recommended that the motion be granted.

### The Allegations

Jumu'ah (or Jum'ah) is a weekly religious service commanded by the Quran that is held on Friday afternoons.  Plaintiff alleges that on a Friday in August 2011 he and all Muslims on disciplinary detention/extended lockdown requested to attend Jumu'ah service or view it by closed circuit television.  Prison officials denied the request.  Plaintiff also complained that Muslims in the cellblocks were denied their kufi caps, prayer rugs, and prayer beads.  A posted policy also limited them to one religious book and three unspecific books.

Plaintiff alleged that reading only the Quran was not the full practice of Islam. He complained that beginner Muslims such as himself needed the assistance of closed circuit television services to show them how to perform their five daily prayers. He said that his inability to watch Islamic programs on television caused Allah "to seal up the Petitioner's heart and turn him back to his homosexual lifestyle" and abandon his religious beliefs.

**Limited Relief Available**

Plaintiff is no longer housed at David Wade. He is living as a free citizen in Baton Rouge. His claims for injunctive and declaratory relief are, therefore, moot. See Cooper v. Sheriff, Lubbock County, 929 F.2d 1078, 1084 (5th Cir. 1991). Plaintiff's claim for compensatory damages is barred by 42 U.S.C. § 1997e(e)'s provision that no federal civil action may be brought by a prisoner for mental or emotional injury without a prior showing of physical injury. This requirement applies to all federal civil actions in which a prisoner alleges a constitutional violation, including First Amendment claims that are not usually accompanied by physical injury. Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005). The only forms of relief available to Plaintiff, if he prevails on the merits, are nominal and punitive damages; they are not barred by the physical injury requirement. Hutchins v. McDaniels, 512 F.3d 193, 197-98 (5th Cir. 2007); Boyd v. Driver, 495 Fed. Appx. 518, 524 (5th Cir. 2012).

**First Amendment Rights of Prisoners**

Inmates retain the protection of the First Amendment, including the directive that no law shall prohibit the free exercise of religion. O'Lone v. Estate of Shabazz, 107 S.Ct. 2400,

2404 (1987).  But incarceration brings about the necessary withdrawal or limitation of many

privileges and rights based on the fact of incarceration and valid penological objectives such

as institutional security.  Id.

The evaluation of penological objectives is ordinarily committed to the considered

judgment of prison administrators who are charged with running the institution.  O'Lone, 107

S.Ct. at 2404.   To ensure that courts afford appropriate deference to prison officials,

challenged regulations are judged under a reasonableness test less restrictive than ordinarily

applied to alleged infringements of fundamental constitutional rights.  Id.  A regulation is

valid if it is reasonably related to legitimate penological interests.   Factors relevant to

determining the reasonableness of the regulation include (1) whether there is a valid, rational

connection between the regulation and the legitimate governmental interest put forward to

justify it, (2) whether there are alternative means of exercising the right that remain open to

prisoners, (3) the impact accommodation of the asserted right will have on guards and other

inmates, and (4) the availability of other alternatives to the regulation that would

accommodate prisoner's rights at *de minimis* cost to valid penological interests.  Turner v.

Safley, 107 S.Ct. 2254, 2261 (1987); Green v. Polunsky, 229 F.3d 486, 489-90 (5th Cir.

2000).

**Defendants' Evidence**

Colonel Lonnie Nail testifies in an affidavit that maximum custody inmates on

extended lockdown are not allowed to assemble with inmates in general population for any

reason.  He states that Plaintiff was, however, allowed to worship individually in his cell and

was allowed one primary spiritual book of his choosing.

Chaplain Ray Anderson testifies that he was involved in responding to Plaintiff's administrative grievances that preceded this suit.  His findings were that it was not cost effective to wire the cellblocks for a dedicated religious channel and that broadcasting worship services on the tiers would create a situation where other prisoners would be subjected to the services that they may want no part of.  He also testifies that the Muslim faith requires an item to place between the worshiper and the ground during prayer, but the item does not have to be a prayer rug.  It can be a towel or blanket.  Anderson also found that there was no requirement for a kufi cap; the need to cover the head during prayer could be accomplished by using a face cloth.

**Analysis and Conclusion**

Plaintiff was apparently on the most secure level of housing at the time his complaint arose.  He does not complain that he should have been allowed to attend services with the general population.[1]  His primary request is that he should have been allowed to view religious services by closed circuit television, but prison officials have presented evidence that this was not allowed due to cost considerations and the desire to not inflict unwanted religious services on members of other faiths who were housed on the same tier and would not be able to avoid hearing the services. Chaplain Anderson's testimony indicates that there

---

[1] An extended lockdown inmate claimed in Hewitt v. Henderson, 2007 WL 3120056 (W.D. La. 2007) that he should have been allowed to attend Friday afternoon prayer services with other inmates. The claim was rejected as frivolous in light of the inmate's ability to pray in his cellblock.

were alternatives available to Plaintiff to exercise his faith in his cell with items that were available to him.  The lack of additional religious items and more extensive literature might not have allowed the most fulsome exercise of Plaintiff's religion, but he was allowed to observe the basic tenets even while on extended lockdown.

The prisoners in O'Lone were completely unable to participate in Jumu'ah because they were assigned to work outside the prison grounds and could not be returned without considerable impact on security and rehabilitative needs, and there were no ready alternative means of allowing participation in the service.  The prisoners could still participate in several other religious observances of their faith.   The Court held that the prisoner's First Amendment rights were not violated. That does not mean all prison officials may now deny participation in Jumu'ah. It means that prison officials in O'Lone did a good job of articulating specific facts about the claims at issue in that case and persuaded the Court the issue should be resolved in their favor under the reasonableness test.

Defendants here could have better served their case by offering specific testimony about the cost/budget concerns regarding closed circuit wiring, the security concerns or other reasons behind the limitations on possession of the books and items that Plaintiff desired, and other relevant factors.  But, given the lack of opposition, it appears they have done enough to warrant summary judgment in their favor.  Plaintiff's desired changes would have impacted the institution financially and would have likely adversely affected the religious interests of other inmates housed in his area.  At the same time, the evidence indicates that Plaintiff could adequately perform Jumu'ah and exercise other aspects of his religion without changing the rules.

Accordingly,

**IT IS RECOMMENDED** that Defendants' **Motion for Summary Judgment (Doc.**

**34)** be **granted** and that all of Plaintiff's claims be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties

aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another

party's objections within seven (7) days after being served with a copy thereof.  Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the

time of filing.

A party's failure to file written objections to the proposed findings, conclusions and

recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass

v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 6th day of May, 2014.

Mark L. Hornsby
U.S. Magistrate Judge